Okay, we'll call the next case United States of America versus Paul Anthony Gojah May it please the court your honor. My name is Omodari Jupiter. I represent the appellant Paul Gojah Your honor, I'm going to ask to reserve four minutes for rebuttal We're asking that the court reverse Vacate the conviction in this case because the district court erred when it failed to suppress the first statement your honor on February 27th Paul Gojah was serving the final hours of his five-day sentence when he was sent by jail guards to a three-by-three foot room When agent Selena Fahey with immigration came to the room and identified herself as an immigration officer Who was asked who was there to ask him questions about his alien age? This was not a normal prison routine. It was not similar to the normal prison routine in Howell versus Fields It was more akin to the custodial environment that Miranda seeks to protect people who are subject to Gojah to conclude that agent Fahey had the power to delay his anticipated release and that a failure to answer her questions Would adversely affect his chances of release This is the type of custodial environment that required the advisement of Miranda warnings The Miranda warnings were not given and this is why we believe the district court and his square your position with Justice Alito's position in Howell's versus Fields Justice Alito specifically stated what is the difference between someone who is part of a normal prison routine and he Specifically went to three factors that he talked about before talking about The factors that the district court considered in this case He said that in a normal prison routine or a prisoner is Distinguished from someone like in Miranda who's taken off the street Because someone's taken off the street has this shock of being isolated taken from their environment then secondly, it's different for someone who's a prisoner because It's unlikely for that person to be lured into speaking by a longing for prompt release The third thing it's most important in this case that puts it puts us more squarely in line with Miranda and his Progeny is Alito said in terror the interrogating officer in this environment Lacks the authority to affect the duration of the sentence your honor in this particular case Yeah, but but but in the house case, I think the authority the authorities were armed where they were armed Yes, I think the the Subject was in restraints. He was in handcuffs or something or body restraints. I think I think that that The that he was in our restraints in the house. Yeah, and it was a pretty lengthy interrogation Yes, your honor the difference though and how these the difference that we have in this case Your honor and what the government failed to prove is where? Where the defendant was with respect to his anticipated release and these this is specifically what I was trying to get to when I'm talking about the decision and how is Why they said we can't we first of all, we don't have a categorical Approach here. And second of all why we're not Looking at this as custody because he's in prison Because if you recall that this was a question of the the lower court finding that there was a categorical rule which they said does not exist and we understand that but in terms of saying why a Prisoner someone who obviously can't get up and walk away Why this does not put him in a Miranda type category is because he's part of this normal prison routine Well in this case the government hadn't did not Bring evidence that this was in fact, there was evidence that His release was imminent The record is somewhat unclear as to whether it was imminent that day or imminent Imminent of I guess in a number of hours the record shows that he was remanded on February 23rd I thought it's gonna be released the next day or something and I think that that that is what the court may have found But I think the court showed that it was not It was not important to the court In fact, it was the government who who was starting to argue the facts of that incarceration There's there's in a record Your honor that this was um that he was taken into custody on the 23rd and that he was dressed and ready to leave The second day she came I would point out to the court however, the court because the court has plenary review that There was not a clear establishment of whether or not or this was going Oh, this was just the fourth day of I think that was a reasonable finding But the 23rd would have been the first day of his incarceration and a 27th Was going to be the fifth day of his incarceration Now how to prison counts it in when he was going to be released is another story But I think it's the government's burden there. In fact Probably count from the time he got there on the 23rd Said again, you're probably count from the time. He got there on the 23rd if you can it might it might I've seen it Both ways I've seen when you get a full day, but you know that that's not in the record and that's the government's burden But I think even if it wasn't even if it wasn't your honor It's a factor that was it was a dominant factor that was not taken into consideration. You know, let me ask you this The freedom whether or not Mr. Goja's freedom of movement was restrained is only the first thing that we have to find The mere fact if we find it is freedom of movement was restrained Isn't enough under the house versus fields slash Miranda test to show that he was in custody Correct, correct. Okay What else is there There are a number of things first of all, there's his reluctance And that was stated not only at the suppression hearing but we also included the transcript from the the preliminary hearing where even in fact agent Fahy Testified check be prompted by government counsel as to whether or not He's was got his reluctance. She she had volunteered that itself when he started to ask. So what did he say? Well, he was very reluctant and she's even said it twice What was he interrogated at all, I mean all the all the agent did was confirm what they already knew from From the prison records, I guess well, well the honest the agent asked Very specific questions that really makes the government's case. I think another difference in this case is this is a Illegal re-entry case the government does not have much to prove and you can bury yourself very quickly Of any consequence that he had already answered the question in that forum he filled out that he's from Jamaica I I don't think it's of any consequence with respect to whether or not these statements The form he filled out I don't think would have would I Don't know that we can say that that would necessarily have been a admitted as a as a confession We don't know that from this record That is as admission by his by his own doing you filled it out Your honor, um, I think that that that wasn't litigated but at any rate I think that the corroborating confession of an agent meeting with a defendant and being able to personally say on the stand at trial That he told me That he was from Jamaica and told me when he came How he came over here The other thing your honor is that he made a statement to her that he did not he denied his illegal status to her Yeah, that's his other evidence of guilt, which which I think is that's it for the he lied to her and through independent sources She found out who he really was. Yes, your honor. So, you know, that's it Are we involved here in an academic exercise suppose you win this case and we send it back What happens then because because she didn't use his information to to prosecute him she Didn't use that information. Well, I think the government is I think the government wants to bring in admissions Even if whether they true or not because they're show consciousness of guilt if you lie about something, I think that's the president Information they she found out who he was I think the question becomes what judge Cowan may be asking is whether or not this was harmless air That's that's probably if we agreed with you that there was a violation of Miranda Was in fact a violation of harmless air and I know you haven't addressed this nor has your adversary Yes this question, but yeah, do you have any thought on it? Yeah, I don't I don't I don't think it's harmless error because It's first of all, we have a Plea in this case. So it never went to trial. So we didn't see how it played out at trial So the court doesn't have a sufficient record as to what the government would have produced that trial or what the defendant would have produced So I think you would have to send it back secondly, there's corrupt anytime you have a Law enforcement agent who can get on the stand and testify that he specifically told her these things I think it's compelling evidence to jury And it obviously We felt that it was a net it was necessary to have a plea in this case a conditional plea Understanding that that evidence was coming in So no, I don't think it was harmless error at least my review of this Record a key factor here is the difference between what the agent told Goja on the 27th and what she told Goja on the 28th and the district court found that on the 27th She told him that he didn't have to answer if he didn't want to whereas he found the district court found that on the 28th She didn't tell him that if we you know And in light of the district courts finding our review of the factual basis is for clear error Although our legal question is plenary How can you argue that The district courts finding was clearly erroneous I think it was clearly I think you can find that it was clearly erroneous because the district court did not assess the Issue of whether or not this was part of a normal prison routine Even when in fact it was like I said, it was even during government's counsel I think government counsel three different times during their argument tried to talk about the actual custody It was almost as if the district court was taking the fields opinion to say the exact opposite that the fact that they're in jail Doesn't make a difference and I don't think that's what fields was saying the other thing the court didn't take into into consideration is that this was a systematic way of doing things by this INS office and they Affirmatively chose on the first visit and as well as on the second visit as a matter of course As part of this criminal alien program not to give Miranda warnings, so it wasn't just a matter of oh in discretion I don't think I need to take Miranda warnings But when I go to the jail and I talk to someone who's from another country and is there is is in the jail and about To get out. I'm not going to give him a random warning except if they come back the second time with the idea of charging And they are going to give Miranda warnings Well, your honor this questionable whether or not they don't have the idea to charge them right when they see them on the first At the first time. All right. All right. We'll we'll have you back on rebuttal Call, mr. Myers May it please the court. My name is Ramirez jr. And I represent the appellee in this particular matter The Court should affirm the district court's decision as to the February 27th interview The Supreme Court has never decided that incarcerating That incarceration constitute custody for Miranda purposes as a matter of fact, they're shied away from it on many occasions The court must look at the circumstances speak into that microphone The course the course must look at the circumstances regarding the interrogation which include the location and questioning and the duration And the situation here is it's a small room. The agent is standing in the doorway and I'm not too sure if I were a prisoner under those circumstances like it just brush by the agent and go back to my cell Well, your honor if you look at the if you look at the whole circumstances Number one, mr. Goja was not brought to the the room He was told by a prison guard that somebody wants to see you. So he walked to the room. That's on That's on j-a-100. I believe he voluntarily walked to the room when he got there agent Faye Showed him her badge and told her told him that she was going to ask some questions concerning his alien age, which she did but It's more that she's standing in the doorway according to what I read in the briefs here and he's in this room it's a small room and Whether he's free to leave is a I'm not too sure too many prisoners are going to push aside A law enforcement agent and say I'm leaving under those circumstances. I Walked back to a cell after the interview the door was open Oh, no, the door was not open. She was standing in the doorway. That's that's that the record is very clear on that She was standing in the doorway, but I do believe that the record is clear. The door was open. Yes She's standing in the door that he can't walk through the door when she's standing in the doorway He could have gotten up at any time your honor and walked out of the room said, excuse me. I'm going back Any questions you think that's a reasonable way this a prisoner of use things when he's in jail to begin with and he's told he's got a visitor and They sit it in a small room and the agent stands in the doorway and shows a badge and you think he's Most prisoners would reasonably just say pardon me. I'm going back. I think under these particular circumstances. Yes It's more of a question of fact that I that a conclusion that that is correct Your honor, but if you look at the facts of this case and you've compared them to feels the prisoner and feels have to be escorted to the room and He had to be escorted back to the room back to his holding facility After the interview as a matter of fact in fields He stated that he had to wait 20 minutes for these for the correctional officers to come down and get him in this particular case Dozier walked to the room by himself and after the interview he walked back to themselves. He didn't have to be escorted or He didn't have to be escorted at all. The interview is over. There's a series of cases showing that the that ice Routinely engages in this type of conduct that is that is correct. Your honor. There are a series of cases as a matter of fact There was one five years prior Cyprian United States versus Cyprian where the court ruled that Miranda warnings were violated It's like it's pushing the envelope a little bit here. Don't you agree? Yeah, I would agree in terms of certain questions that they asked. Yes, they are pushing the envelope. However, They are conducting the purpose is to conduct a civil interview at first Yeah, which which is what they do to determine alien is where you from. How did you get here so forth and so on? Yeah, but they're You said that's a civil interview Hey, they knew that from looking at the record He was listed as a Jamaican national on the record That's all they were interested in and and and I would have to Inform the court that if Madeline Albright Had been arrested prior to her becoming nationalized. She would have put Czech Republic on that particular form also Just because Jamaican national just because you were born in Jamaica or you're a citizen of Jamaica That doesn't mean that you're here that you're here illegally. He could have been a legal permanent resident, but but Agent Fahey was there for a purpose. Yes agent Fahey was there for a purpose part of her routine was to visit the jail To check on people who were not United States citizens to see if they were here illegally That's correct. She wanted to interview everybody Who placed? Who said it were citizen of another country? Okay in the booking form. All right. I want to go back to the comparison between Mr. Goja and fields in the house versus fields case Fields was a sentenced prisoner in that she got a choice. Okay here. Mr. Goja Who had been detained for five days for whatever reason he for violating a court order that's correct He was here for five days and whether he was to get out the 27th or the 28th. He was a short-termer Yes, he was in this prison very similar to somebody taken off the street and interviewed, correct? No, he was actually serving a sentence. He was not someone who just swept off the street Yeah, but he was he was sentenced by the court by the magistrate to serve five days He had a clear expectation that that day or the next day he was out of there the next day on the 28th He was scheduled to be without it You know, there are factors here that distinguish this case from house versus field. So you agree with me? Yes, sir. All right The second thing and perhaps you alluded to this already. It looks like ice had a policy that we don't normally Mirandize unless we're coming back for purposes of filing charges. That is correct. That's that's what the policy was Is that a policy? It's deceptive that we should look at as to whether or not they may not be, you know Show and trying to get answers From people that they're talking to no, no, no Yeah, and if you look at the facts of this case and you compare them to house versus field number one In house versus feel the prisoner was interrogated by two armed sheriff's officers Agent for agent for it was not armed number two And how I didn't know whether she was armed or not I mean, I have the record doesn't show whether he knew she was armed or not No, it does not all I mean as a prisoner I would assume I'm dealing with a law enforcement official that the official was armed she may have left it at the desk when she went to prison, but most prisoners I think Assume if they're talking to a federal law enforcement official that person as is armed Yes, your honor, but there's nothing on the record that shows that either way that that that mr Goja knew or had any would it be improper to for him to assume she's armed No, I would not it would not be a problem. It would not be proper to do for him for me to state that Mr. Gage you could assume mr. Goja could assume that that agent for he was Incidentally if if if he wasn't in custody and he was free to leave as you say, why didn't she tell him that? That's not in the record, but what is in the records that do there's nothing in the record has to indicate why she did not Tell him that what isn't the record is that she stated that if you want to answer the questions you can answer the questions if you don't you don't have to she said when she She said that at first, but then she said the second part of her Questioning from the court. She says well, I said the same thing to him about answering on the 28th as I did on the 27th Yes, and the court found that on the 28th. She didn't tell him that If you didn't want to answer you didn't have to answer now How could? Under those circumstances, how could the district court give weight? to her statement on About the 27th and Not give weight to that statement about the 28th. Isn't that isn't that finding clearly erroneous? No, no, it is not your honor She said I did the same thing both days if you were to look at the record the record is clear on the on it on the 27th During my direct examination over and during cross examination by the defense attorney. She stayed on the 27th I told him you can answer questions or You don't have to answer questions and on the record is clear. Go. She said she never told him that well Well, the record is clear on the 27th. That's what she said on the 28th. She she she wavered a little bit She said well, she thinks she told him the same thing on the 20s on the 28th But in terms of the 27 she said that's what she told him the 28th was a little iffy She equivocated about what she told him the second time. She talked about it Equivocated and on top of that equivocation was gorgeous testimony. She never told me on either day Well, the honor the record is clear in terms of agent for his testimony that yes on the 27th She did tell him you can answer questions or you don't have to answer questions The 28th is not too clear and that's what and that's what the court picked up on to be quite frankly They picked on the fact that picked up on the fact that she was not clear Whether she did say the same thing On the 27th on the 28th, and that's one of the reasons why the court Suppressed the evidence of the questioning on the 28th because of that she was not clear what she said However, if you read the record is very clear on the 27th She said that you can answer questions, but you don't have to answer any questions Now your honor if you if you compare the the question is to how In terms of whether or not they were armed the duration of the question and how and how he was questioned I believe the record the case said between 5 and 7 hours The the the record indicates that mr. Goja was questioned between 10 and 15 minutes He walked to the self. He walked to the room freely. He walked back from the room freely He was told whether he told he was told that he can answer questions. He didn't have to answer any questions So if you compare the two the cases It is very clear on the record that mr. Goja was free to leave He was free to answer questions. He was free not to answer questions and Because of that he was not in custody in terms of Miranda Well, the question is was he free to leave and she never told him he's free to leave No, the record is clear. She never told him I would assume a prisoner in that situation would assume he's not free to leave especially when they the The federal officer is standing in the doorway in a small room He's not free to leave unless he's gonna knock her over and that's gonna cause a lot of problems for him to that in that jail your honor I Stated earlier the door was open. Yes. She was standing in the doorway. And yes, it was a small room But he could have gotten up and walked back to his cell. Oh, yeah He can't fly. He's got to walk through the door. Yes, and he could have he could have said simple. Excuse me I'm going back. I don't know answering any questions I'm going back to myself and he should assume he should assume that he could do that without getting in any trouble Yes, your honor. That's a rash assumption I want to tell you if you're a prisoner and you're in jail in the first place and you're talking to a law enforcement official. I Think most people are a lot more Reticent to assume that they could just walk away. I Understand that but if you look at the circumstances of what happened here in this particular case The fact that he walked there by himself He walked away by herself as a matter of fact, the only person who was escorted was was was was agent Faye She was the only one who was escorted out of the room by a correctional officer Mr. Mr. Goji got up and walked back to his cell on his own the same question We asked her out your friend across the aisle if we disagree with you and reverse this What is the practical effect of that reversal if it goes back? If it went back we would try mr. Goja for re-entry Based on the physical evidence you can't use the information that you got from him during During this interrogation if we reverse you that's correct. We will be able to use any information that we got from this interrogation However, the body is not suppressed your honor. I really forgot the name of the case. But however, his fingerprints won't be suppressed So essentially you would acknowledge that as to you know if we found that He was improperly interrogated while he was in custody and suppressed the answers that he gave on the 27th You would recognize he could withdraw his guilty plea. Yes. Okay, so you would try him on illegal re-entry Let me ask you this talking about leaving the room and not leaving the room one thing. It's pretty clear He left the country. He's back in Jamaica. That is correct. Okay You didn't raise it, but we always have an obligation to look at this You know, is this is this case moot Your honor We did not raise the jurisdiction argument for two reasons number one this was a conditional plea the condition on the on the on the fact that he would be able to Appeal this particular suppression issue. So that's one of the reasons why we did not Go into the jurisdictional issue and also secondly the recent case of United States versus Alfara appeal number 12 dash 1893 2013 Westlaw 5 8 1 4 1 2 6 in which this court stated recently that It's not automatically moot the fact that a prisoner has been Deported the court stated that the government must prove that yes, the prisoner has been deported But most but much more and in this particular case the court this court ruled that the government did not prove his case that Deportation is a bar and they went ahead and there could be Collateral consequences. That is correct. Okay, so you're not arguing that no but You know the interesting case thing about this case which maybe has a double step of mootness to it Mr. Goja was already deported before he came back Under this episode Okay, so even a few white even if we would wipe this convict this plea odd by virtue of Finding that there was a Miranda violation You know What right would he have to come back here He had been deported a time before that that is correct your honor However, there are certain circumstances where a deportee can reapply to re-enter and we don't know that sir You're saying we don't know whether those circumstances exist here. That's correct your honor. We don't know whether the circumstances exist for this particular. Yeah All right. Yes, very good. And in conclusion your honor The government believes that he was not in custody in purpose of Miranda, therefore the court's order should be one final question on this If you know this question, mr. Myers Is the supervisory clearly he's within the period of the supervised release even though he served his 15 months Yes, he's within the period of supervised release. Yes. Is there an active supervised release? That goes on when somebody like mr. Goja is deported Not that I know of your honor to be quite frank, I really don't know you don't know that yes Okay, mr. Jupiter smiled. Maybe he knows the answer to that question. Thank you You know As a practical met as a practical matter. I can tell you from experience that there's there's no active supervision I know that's not in the record. But when someone is deported, obviously, they can't be However when we do have instances the court probably is aware that people do come back And then they're subject to extra penalties when they come back Though let's assume he came back. Yes, if he came back and There was not a subsequent finding of guilt and there was not he had not previously been deported or if he was allowed to be back here Would the supervised release period start at that time? With the with the supervisor. Yeah, he's he's got to do three months three years of supervised release somewhere Yes And it would have started my understanding is that it would start it would start a later release On his release that it would have started that it would have started on his release from prison that that that's That's my understanding your honor. I I don't have the record I don't have the rules, but I thought that that their release does expire if they don't I guess Come back in that three-year period. It doesn't just toll for the rest of their lives if they don't come back that That's my understanding of it At any rate your honor. I think we rely on the cases We cited in the brief the Jackson case to talk about the the movements issue, but I think the government has conceded that Few things that Mr. Myers indicates that Agent Fahey stated very clearly that you can talk if you want to if you don't want to answer questions that's fine as well when in fact a that that those weren't agent Fahey's words and It's very what's very clear in the record. Is that? Whatever agent Fahey was trying to say was not effectively communicated to mr. Goja in in word and deed And if you look at the case the cases that talk about what needs to what can be considered in Determining whether or not the individual has been There's been some restriction on the movement of the individual or are there the hopes of freedom? It's that something must be said or done by the authorities Either in their manner of approach or in the tone or the extent of their questioning which indicates They would not have heeded a request to depart or to allow the suspect to do so in this in the whole environment and If we look at the record as a whole as to how agent Fahey approached This whole interview it was communicated very clearly that you don't have the right to leave As your honor pointed out that she was standing in a doorway He was sent to this room by guards of whether he was escorted or not is is Beside the fact and also psychologically what's going on with him? This is not someone who is going to be in jail for a long time he's getting out very shortly and we all know what's communicated when you put down that you're from Jamaica and You are specifically systematically targeted to come and talk to Immigration It's not reasonable for that person to think that they can terminate this issue or to think that This is this is a situation where the person who I'm talking to Doesn't have control over my destiny and that's the main thing that was brought out in the Shatzer case That's the main thing that was brought out in the fields case and matter of fact in Shatzer Even though it was dealing with an issue of an Edwards versus Arizona issue It still talked about this difference between prisoners and it said Interrogated suspects who have previously been convicted of crime live in prison when they are released back into the general prison population They returned to the accustomed surrounding and daily routine. They regained the degree of control They had in their lives prior to the interrogation that situation was not this it was not present with mr Goja, and that's why the Suppressed and that's why it should be reversed. Thank you Council for excellent arguments and we will take this matter under advisement